April 7, 2022

The Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall United States Courthouse
Room 705
40 Foley Square
New York, NY 10007

      Re:   *JPMorgan Chase Bank, N.A., London Branch v. Tesla, Inc.*,
              Case No. 1:21-cv-09441

Dear Judge Gardephe:

Pursuant to Your Honor's Notice of Pre-Trial Conference [Docket No. 12] and March 3, 2022 Order [Docket No. 27], plaintiff JPMorgan Chase Bank NA, London Branch ("JPMorgan") and defendant Tesla, Inc. ("Tesla" and, together with JPMorgan, the "Parties"), by and through their respective undersigned counsel, file this joint letter to address the items identified by the court in anticipation of the initial pretrial conference scheduled for April 14, 2022 at 1:00 p.m.

    1.  *A brief description of the case, including the factual and legal bases for the claim(s) and defense(s).*

Plaintiff's Statement[1]: JPMorgan brings this action to recover over $162 million immediately due and payable by Tesla to JPMorgan under the plain terms of the Agreements.[2]

On February 27, 2014 and March 28, 2014, Tesla sold to JPMorgan a series of stock warrants expiring in 2021 (the "Warrants") pursuant to the Agreements, which required Tesla to deliver, at its election, either shares of its stock or cash to JPMorgan if, at the time the Warrants expired, Tesla's share price was above the contractual "strike price." The Agreements also included standard provisions intended to protect the Parties from the economic effects on the warrants of announcements of significant corporate transactions involving Tesla ("Announcement Events").

On August 7, 2018, an Announcement Event occurred when Tesla's CEO, then-Chairman, and largest shareholder, Elon Musk, announced via Twitter, "considering taking Tesla private at $420. Funding secured." Tesla subsequently confirmed the accuracy of the tweet and its consideration of a going-private transaction. Tesla's stated

---

[1] The following synopsis is only a summary of JPMorgan's claims.

[2] Capitalized terms used but not defined herein have the meaning ascribed to them in the *Complaint* [Docket No. 1] (the "Complaint").

intention to explore and consider a going-private transaction constituted an Announcement Event under the Agreements.  JPMorgan, as Calculation Agent, had broad and sole discretion to adjust the terms of the Warrants for the economic effects of the Announcement Event on the Warrants, subject only to the requirement that its determinations "be made in good faith and in a commercially reasonable manner."  In accordance with the contract and consistent with its standard practice, JPMorgan determined that the strike price of the Warrants had to be reduced from $560.6388 to $424.66 to maintain the same fair value as they had before Tesla's August 7 Announcement Event, and made that adjustment and modified its hedge positions on August 15.

After the close of trading on August 24, 2018, Tesla published a blog post announcing that Tesla was abandoning the going-private proposal.  JPMorgan treated Tesla's August 24 announcement as it was contractually required to—as a new Announcement Event—and determined that increasing the strike price to $484.35 was the appropriate adjustment to maintain the same fair value that the Warrants had before that second Announcement Event.  It modified its hedge positions the same day as this second adjustment, August 29.

When the Warrants expired "in the money" in June and July 2021, Tesla settled at the original strike price (as adjusted only for Tesla's 5-to-1 stock split) and refused to settle in full at the adjusted strike price.  In total, Tesla failed to deliver 228,775 shares of its common stock.  JPMorgan timely noticed Tesla's Events of Default and exercised its right to set an Early Termination Date for August 2, 2021.  In calculating the Early Termination Amount, JPMorgan valued the undelivered shares at $162,216,628.81, based on the average price of $709.07 per share that JPMorgan paid to acquire replacement shares on the open market. Tesla failed to pay that amount when due on August 5, and is liable for the full Early Termination Amount, as well as pre-judgment interest and indemnification of JPMorgan's costs and attorneys' fees.

On January 24, 2022, Tesla answered JPMorgan's complaint and asserted counterclaims for breach of contract and declaratory judgement, alleging that JPMorgan breached the Agreements by making the adjustments.  Tesla asserts that that the August 7 tweet was not an Announcement Event because it was an announcement of Musk's "personal consideration of a possible transaction to take Tesla private was not tantamount to a buyout announcement by the company."  Counterclaim ¶ 7.  Tesla also asserts that JPMorgan's adjustments were not commercially reasonable or made in good faith.

Tesla's defenses and counterclaims are fatally flawed for a number reasons.  First, the August 7 tweet, which was confirmed by Tesla in subsequent public statements, was an Announcement Event as a matter of law.  Second, Tesla's counterclaim does not allege any facts sufficient to demonstrate that JPMorgan's actions were not made in good faith and in a commercially reasonable manner.  Third, Tesla's counterclaim fails to allege any cognizable harm as a result of JPMorgan's purported breaches that would justify a separate counterclaim.  Fourth, notwithstanding Tesla's assertion in its Counterclaim that JPMorgan should have terminated the Agreements in 2018, Tesla

never suggested that JPMorgan do as much until now. Lastly, Tesla's claim for declaratory judgement that JPMorgan breached the Agreement is unnecessary given that any adjudication of JPMorgan's claims will necessarily resolve that issue.

Defendant's Statement[3]:  On February 27, 2014, Tesla issued warrants to JPMorgan and certain other dealer banks entitling the warrant-holders to acquire Tesla's common stock for a pre-agreed strike price.  The governing agreements contemplated the possibility of a contractual "Announcement Event," such as the public announcement by Tesla of a merger or a takeover offer that would have an economic effect on the warrants.  Following such an event, the contract contemplated that JPMorgan, acting in good faith and in a commercially reasonable manner in its capacity as Calculation Agent for its respective warrants—might adjust the terms of the warrants to account for the economic effect, if any, of the Announcement Event.  If JPMorgan determined that no adjustment it could make would produce a commercially reasonable result, the contract instead required JPMorgan to cancel the warrants.

On August 7, 2018, Elon Musk posted on Twitter that he was "considering taking Tesla private at $420," and explained in a subsequent blog post that he had been contemplating such a possibility in his "personal capacity."  However, Mr. Musk decided ***not*** to pursue a take-private offer.  Mr. Musk's consideration of a potential take-private transaction did not constitute an Announcement Event.  Nonetheless, on August 17, 2018, JPMorgan claimed that an Announcement Event had occurred, and purported to drastically reduce the warrants' strike price, from approximately $560.64 to $420.66 per share. JPMorgan then failed to restore the warrants to the agreed strike price after Mr. Musk disclosed on August 24, 2018, that he was no longer considering taking Tesla private. Instead, JPMorgan purported to hold the warrants at a strike price of $484.35 per share, substantially below their original strike price, even as the fair market value and implied volatility of the warrants soared beyond levels seen at any time during or prior to August 2018.

As alleged in the Counterclaim,[4] JPMorgan's actions were unjustifiable and irreconcilable with any potential economic effect of Mr. Musk's tweet on the warrants, based on contemporaneous market data.  JPMorgan took these actions in a commercially unreasonable manner, exploiting Mr. Musk's tweet in bad faith as a pretext to deprive Tesla of the benefit of its bargain.  No bank other than JPMorgan asserted that Mr. Musk's tweet was an Announcement Event under the terms of the warrants.  Moreover, even if JPMorgan were correct that an Announcement Event occurred, JPM breached the contract, which required it to terminate the warrants rather than make commercially unreasonable adjustments.

---

[3] The following synopsis is only a summary of Tesla's counterclaims and defenses.

[4] Capitalized terms used but not defined herein have the meaning ascribed to them in the *Answer and Counterclaim* [Docket No. 17] (the "Counterclaim").

JPMorgan received billions of dollars' worth of shares from Tesla when the warrants expired in 2021.  Not content with this enormous payout, JPMorgan demanded an additional 228,775 shares to settle the warrants, based on its purported reduction of the strike price from 2018.  When Tesla refused to countenance this windfall, JPMorgan improperly demanded the inflated sum of $162 million in cash as the purported fair market value of shares that were worth substantially less than that amount, when valued in accordance with the governing agreement.

JPMorgan's actions breached its duties as Calculation Agent for the stock warrants. JPMorgan's purported claims and defenses cannot justify its attempt to extract a commercially unreasonable windfall at Tesla's expense.

*First*, JPMorgan's purported determination that Mr. Musk's tweet was an Announcement Event was commercially unreasonable and made in bad faith to extract a windfall from Tesla.  JPMorgan knew that Mr. Musk's contemplation of a possible take-private transaction was not a buyout announcement by the company, and JPMorgan was alone in contending that it was.

*Second*, JPMorgan's self-dealing reduction of the strike price was not justified by any purported "economic effect" on the warrants.  Although JPMorgan asserts that changes in Tesla's expected future volatility justified an adjustment, JPMorgan wildly exaggerated those fluctuations and could not have believed in good faith that there would be any economic effect on the warrants, which were not exercisable until 2021.

*Third*, JPMorgan knew, at the time that it purported to reduce the strike price, that doing so would produce a commercially unreasonable result.  Under the parties' agreement, JPMorgan's determination that an Announcement Event had occurred (a determination that Tesla disputes) and that no adjustment would be commercially reasonable, would expressly require JPMorgan to cancel the warrants in 2018, rather than obtaining the multibillion-dollar payout that JPMorgan later received at Tesla's expense.

*Fourth*, even after Mr. Musk stated on August 24, 2018, that Tesla would remain a public company, JPMorgan purported to retain the bulk of the windfall it had dealt itself by failing to restore the warrants to the pre-agreed strike price.  Indeed, JPM improperly continued to hold the warrants below the agreed-upon strike price from August 2018 forward, even as Tesla's implied volatility soared to unprecedented levels.

*Fifth*, after the warrants expired, JPMorgan demanded $162 million in cash from Tesla, purportedly based on the fair market value of the additional shares that JPMorgan sought from Tesla.  However, JPMorgan blatantly overvalued the shares, by valuing them *after* the warrants' scheduled settlement dates, in violation of clear contractual language.

As a result of JPMorgan's breaches, Tesla is entitled to damages, indemnification for its reasonable out-of-pocket expenses, and other relief, including a declaration to resolve any uncertainty as to the strike price of the warrants and to recognize JPMorgan's default under the ISDA Master Agreement.

2. *Contemplated motions.*

   Plaintiff's Statement: JPMorgan currently intends to move for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), as explained in its pre-motion letter to this Court.  Docket. No. 23.

   Defendant's Statement: Tesla respectfully submits that JPMorgan has not stated meritorious grounds for a motion under Fed. R. Civ. P. 12(c), as set forth in Tesla's response to JPMorgan's pre-motion letter.  Docket No. 26.  Tesla contemplates a potential motion for summary judgment pursuant to Fed. R. Civ. P. 56.

3. *Prospect for settlement.*  The Parties are willing to consider reasonable settlement offers, but to date the Parties have not had meaningful settlement discussions.

\*      \*      \*

   We thank the Court for its attention to this matter and look forward to a productive initial pretrial conference on April 14, 2022.

Respectfully,

By:   /s/  *Lawrence Portnoy*
Lawrence Portnoy
Greg D. Andres
Sheila R. Adams
Craig T. Cagney
Michael V. Pucci
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
lawrence.portnoy@davispolk.com
greg.andres@davispolk.com
sheila.adams@davispolk.com
craig.cagney@davispolk.com
michael.pucci@davispolk.com

*Attorneys for Plaintiff*
*JPMorgan Chase Bank, National*
*Association, London Branch*

By:   /s/  *Jonathan E. Pickhardt*
Jonathan E. Pickhardt
Alex Spiro
Nathan Goralnik
Jesse Bernstein
51 Madison Avenue, 22nd Floor
New York, NY 1001
Tel: (212) 849-7000
jonpickhardt@quinnemanuel.com
alexspiro@quinnemanuel.com
nathangoralnik@quinnemanuel.com
jessebernstein@quinnemanuel.com

*Attorneys for Defendant*
*Tesla, Inc.*