**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------x
:
JPMORGAN CHASE BANK, NATIONAL :
ASSOCIATION, LONDON BRANCH, :
: Case No. 1:21-cv-09441-PGG
Plaintiff, :
:
- against - :
:
TESLA, INC., :
:
Defendant. :
:
------------------------------------x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

| | | | PAGE |
|---|---|---|---|
| ARGUMENT | | | 1 |
| I. | The August 7 Tweet Was an Announcement Event | | 1 |
| | A. | The August 7 Tweet Satisfies the Contractual Definition as a Matter of Law | 1 |
| | B. | The Occurrence of an Announcement Event is a Straightforward Question of Contract Interpretation for the Court to Decide | 4 |
| | C. | The Federal Rules Do Not Prohibit the Court From Resolving the Announcement Event Issue on the Pleadings | 5 |
| II. | Tesla Fails to Allege That the Adjustments Were Not Made in Good Faith or in a Commercially Reasonable Manner | | 6 |
| III. | Tesla's Meritless Counterclaims Should Be Dismissed | | 9 |
| | A. | Tesla's Breach of Contract Claims Fail as a Matter of Law | 9 |
| | B. | Tesla's Declaratory Judgment Claim Must Be Dismissed as Duplicative | 10 |
| CONCLUSION | | | 10 |

**TABLE OF AUTHORITIES**

PAGE(S)

CASES

*Arista Recs. LLC v. Lime Grp. LLC*,
   No. 06 CV 5936, 2011 WL 13257941 (S.D.N.Y. Jan. 7, 2011) .............................................. 5

*Awards.com, LLC v. Kinko's, Inc.*,
   42 A.D.3d 178 (1st Dep't 2007) ............................................................................................. 9

*Bell Atlantic v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................... 3

*Bradley v. Fontaine Trailer Co.*,
   No. 3:06-CV-62, 2009 WL 763548 (D. Conn. Mar. 20, 2009) ........................................... 5, 6

*Dalton v. Educ. Testing Serv.*,
   87 N.Y.2d 384 (1995) ............................................................................................................ 9

*DirecTV Latin Am., LLC v. Park 610, LLC*,
   691 F. Supp. 2d 405 (S.D.N.Y. 2010) .................................................................................... 6

*Gaia House Mezz LLC v. State St. Bank & Tr. Co.*,
   720 F.3d 84 (2d Cir. 2013) ............................................................................................. 4, 8, 9

*Hayden v. Paterson*,
   594 F.3d 150 (2d Cir. 2010) ................................................................................................... 6

*Kenall Mfg. Co. v. Cooper Lighting, LLC*,
   354 F. Supp. 3d 877 (N.D. Ill. 2018) .................................................................................. 5, 6

*KLS Diversified Master Fund, L.P. v. McDevitt*,
   507 F. Supp. 3d 508 (S.D.N.Y. 2020) .................................................................................... 4

*Lessambo v. Pricewaterhousecoopers, L.P.*,
   No. 08 Civ. 6272, 2009 WL 2170179 (S.D.N.Y. 2009) ......................................................... 5

*Logical Operations, Inc. v. CompTIA, Inc.*,
   No. 6:20-CV-06238, 2021 WL 1099619 (W.D.N.Y. Mar. 23, 2021) ..................................... 5

*Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd.*,
   930 F. Supp. 2d 532 (S.D.N.Y. 2013) .................................................................................... 7

*Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*,
   94 F.3d 747 (2d Cir. 1996) ................................................................................................... 10

*Phoenix Four, Inc. v. Strategic Res. Corp.*,
   No. 05 CIV. 4837, 2006 WL 399396 (S.D.N.Y. Feb. 21, 2006) ............................................. 3

*Process Am., Inc. v. Cynergy Holdings, LLC,*
   839 F.3d 125 (2d Cir. 2016) ............................................................................................. 3, 4

*Salameno v. Rawlings*,
   No. 19 Civ. 4442, 2021 WL 1085521 (S.D.N.Y. Mar. 22, 2021) ......................................... 6

*State of N.Y. v. SCA Servs., Inc.*,
   754 F. Supp. 995 (S.D.N.Y. 1991) ....................................................................................... 5

*Toledo Fund, LLC v. HSBC Bank USA, Nat. Ass'n,*
   2012 WL 2850997 (S.D.N.Y. July 9, 2012) ........................................................................ 7

*Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*,
   487 F.3d 89 (2d Cir. 2007) ................................................................................................... 9

*Turner Network Sales, Inc. v. Dish Network*,
   413 F. Supp. 3d 329 (S.D.N.Y. 2019) ................................................................................ 10

### STATUTES & RULES

Fed. R. Civ. P. 1 ............................................................................................................................. 6

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 6

Fed. R. Civ. P. 12(c) ...................................................................................................................... 6

Fed. R. Civ. P. 12(d) ...................................................................................................................... 6

Fed. R. Civ. P. 52(c) ...................................................................................................................... 6

Fed. R. Civ. P. 56(a) ...................................................................................................................... 6

JPMorgan's opening brief ("Br.") demonstrated that the undisputed facts establish that two Announcement Events occurred, and no facts alleged in Tesla's counterclaim, even if accepted as true, plausibly show that JPMorgan's strike price adjustments were not made in good faith and in a commercially reasonable manner. Tesla's opposition ("Opp.") fails to identify any dispute of fact precluding judgment in JPMorgan's favor on these issues.

Rather than amend its counterclaims so it could add any missing facts, Tesla improperly submits the affidavit of Steven Halperin, a potential fact witness, in an attempt to show that expert discovery is necessary. It is not. While the Halperin affidavit cannot be considered on this motion, it is noteworthy for substantially undercutting Tesla's arguments. Mr. Halperin confirms that the occurrence of an Announcement Event is a "legal determination," declines to say whether another Tesla warrant holder—Barclays (where Mr. Halperin worked at the time)—concluded that Mr. Musk's tweet failed to constitute an Announcement Event, and confirms that, under at least one model endorsed by the contract, the market data supports a net reduction of the strike price.

The pleadings establish that JPMorgan acted in good faith and in a commercially reasonable manner. Tesla's quarreling that JPMorgan could have calculated an adjustment more favorable to Tesla is not enough to defeat JPMorgan's claim. The Court should enter judgment in JPMorgan's favor accordingly.

## ARGUMENT

**I.     The August 7 Tweet Was an Announcement Event**

The August 7, 2018 tweet satisfied each of the first three Announcement Event definitions as a matter of law.[1] Br. 10-13. This purely legal issue is ripe for adjudication on the pleadings.

**A.     The August 7 Tweet Satisfies the Contractual Definition as a Matter of Law**

Satisfying any one of the three definitions is sufficient for the August 7 tweet to be an Announcement Event. Tesla fails to show that this tweet falls short of any, let alone all of them.

---

[1] Tesla concedes that the August 24 blog post would be a second Announcement Event if "the August 7 tweet was an Announcement Event." Opp. 14. All undefined terms in this brief shall have the meaning set forth in JPMorgan's opening brief.

- 1 -

*First,* the tweet was an "announcement by the Issuer of any intention to enter into a Merger Event or Tender Offer." Br. 11-12. Tesla does not seriously dispute that the tweet was attributable to Tesla as an "announcement by the Issuer," nor can it given Mr. Musk's role and its identification of his Twitter account as a source for company information. *See id.* Instead, Tesla disputes whether the tweet reflects Tesla's own "intention to enter into a Merger Event or Tender Offer." Opp. 13. Tesla never explains why the intention needs to be Tesla's own, when the plain language includes an "announcement by the Issuer of ***any*** intention." Confirm'n (Exs. A, B) § 2 at 9; *see* Br. 10-11. Even under Tesla's narrow construction, Tesla's announcement of its management's supposedly "personal" plans to make a buyout offer would suffice to show that at least Mr. Musk and Tesla's executives intended "to enter into a Merger Event or Tender Offer." *See* Opp. 13.

In any event, Tesla's construction of the tweet is counterfactual, ignoring the coordinated messaging from Tesla *the same day* confirming that the tweet had announced the company's own intention and strategic plan to go private. Not only was the tweet made by Tesla's chief executive and chairman of its board, but it was accompanied by both a blog post prepared by other top Tesla executives detailing the plan for employees and investors, and statements by Tesla's head of investor relations confirming the offer was "as firm as it gets." *See* Ans. ¶ 19, 21, 29; Exs. K, L. Mr. Musk even tweeted that the "[o]nly reason why this is not certain is that it's contingent on a shareholder vote," not company or board approval. Ans. ¶ 21; Ex. J. In any event, the board confirmed the next morning that it was discussing with Mr. Musk "how being private could better serve Tesla's long-term interests" and "taking the appropriate next steps to evaluate this." Ans. ¶ 23; Ex. M. The tweet thus announced that Tesla itself had at least some intention of entering into Mr. Musk's proposed going-private transaction.

*Second*, for similar reasons, the August 7 tweet also announced at least "an intention to explore strategic alternatives or other similar undertaking that may include, a Merger Event or Tender Offer." Br. 12-13. Tesla disputes whether its board had such an intention, but does not explain why the intention of Tesla's management (as expressed by Mr. Musk, other officers, and the board itself) is not the intention of "the Issuer." While Tesla makes much of the opinion of

one JPMorgan equity research analyst who suggested that the board might not support Mr. Musk's plan, Opp. 14, it ignores the conclusion in the same report that "Tesla does appear to be exploring a going private transaction." Ex. X.  In addition, Tesla's allegations about the board's private views fail to negate the board's public statements, including the announcement that it had created a special committee to "***evaluate*** and negotiate a potential Going-Private transaction ***and alternatives to any transaction proposed by Mr. Musk***." Ex. W.  Whatever its motivation, the board publicly confirmed that the tweet announced Tesla's own intention to "explore strategic alternatives."

*Finally*, the tweet also was "[t]he public announcement of any Merger Event or Tender Offer."[2]  Confirm'n (Exs. A, B) § 2 at 9; Br. at 10-11.  To satisfy this definition, the announcement need not have been made by Tesla, which Tesla does not dispute.  Instead, Tesla argues that the "Tender Offer" definition requires an offer "***that results in***" the actual acquisition of stock, not one that would so result only if consummated.  Defs. (Ex. D) § 12.1(d).  This narrow reading is not only inconsistent with the plain language but also would eliminate the additional Announcement Event protection that the parties added in the Confirmations.  The Confirmation separately contemplates adjustments upon the consummation of a Tender Offer, Confirm'n (Exs. A, B) § 2 at 8-9, "on or after the relevant Tender Offer Date," which is "the date on which voting shares in the amount of the applicable percentage threshold are actually purchased or otherwise obtained."  Defs. (Ex. D) §§ 12.1(e), 12.3(d).  The Announcement Event provisions allow for additional adjustments upon the announcement of a Tender Offer, which may be made on the date of the announcement, subject to further adjustment if the offer is later "withdraw[n]," "abandon[ed]," or "discontinu[ed]."  Confirm'n (Ex. A, B) § 2 at 9.  The Announcement Event adjustment would be superfluous if it could only be made after the shares are "actually purchased or otherwise obtained."  Defs. (Ex. D) § 12.1(e); *see Process Am., Inc. v. Cynergy Holdings, LLC,*

---

[2] The complaint includes all three definitions and thus provides "fair notice" of JPMorgan's claim.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007); *Phoenix Four, Inc. v. Strategic Res. Corp.*, No. 05 CIV. 4837, 2006 WL 399396, at *10 (S.D.N.Y. Feb. 21, 2006) (complaint need only "set forth the terms of the agreement upon which liability is predicated" (citation omitted)).

839 F.3d 125, 133 (2d Cir. 2016) ("An interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible." (citation omitted)).  Announcing an offer that *would* result in acquiring the requisite shares, as Mr. Musk's tweet did, satisfies this prong of the Announcement Event definition.

### B. The Occurrence of an Announcement Event is a Straightforward Question of Contract Interpretation for the Court to Decide

Whether Tesla's announcement meets the contractual definition is a pure legal question and does not depend on any factual disputes concerning JPMorgan's good faith or reasonableness.

Contrary to Tesla's assertions, the Calculation Agent does not "designate" an Announcement Event; it either occurs or not depending on whether certain public announcements satisfy the definition.  The Calculation Agent's duties are limited to those expressly "requir[ing] [it] to act or to exercise judgment in any way," Defs. (Ex. D) § 1.40, which express provisions build "[a] certain amount of flexibility . . . into a number of the provisions." *Id* at ix.  Tesla does not identify any contractual provision "requir[ing]" the Calculation Agent to make a discretionary decision on whether to "designate" an "Announcement Event."[3]

In any event, at no point does Tesla explain how JPMorgan possibly could have acted in bad faith or in a commercially unreasonable manner if the announcements satisfy the contractual definition as a matter of law, which as demonstrated above they do.  *See Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84, 94 n.5 (2d Cir. 2013) ("The principle of good faith constrains a party's actions, not a party's motives for those actions.").  Tesla argues that it was unreasonable not to "wait-and-see" at least fifteen days, but the contract does not impose any waiting period; quite the contrary, it expressly permits adjustments the *same day*.  *See* Br. 21 (citing Defs. (Ex. D) § 12.3(d); Confirm'n (Exs. A. B) § 2 at 9).  Tesla also argues that no other dealer believed an

---

[3] Contrary to Tesla's suggestion, Opp. Br. 15, the specific assignment of responsibility in the Tender Offer definition for determining the amount of stock that would be acquired demonstrates that the Calculation Agent was *not* granted broader obligations to "designate" an Announcement Event.  *See KLS Diversified Master Fund, L.P. v. McDevitt*, 507 F. Supp. 3d 508, 542 (S.D.N.Y. 2020) ("[W]hen a term is expressly included in a contractual provision, its exclusion from other provisions within the same contract reflects the parties' intent that the omission was intentional.").

Announcement Event occurred, but it does not plead that,[4] and even accepting that assertion as true, their determinations would be erroneous if the contractual definition were satisfied as a matter of law and cannot render JPMorgan's correct determination bad faith or unreasonable.

### C. The Federal Rules Do Not Prohibit the Court From Resolving the Announcement Event Issue on the Pleadings

In an effort to delay resolution of the Announcement Event issue, Tesla argues that "[a] Rule 12(c) motion is not appropriate to resolve issues forming only part of a claim or defense." Opp. 10. Nothing in the Federal Rules or the Advisory Committee's notes supports that position.

The prevailing rule in the Second Circuit is that "[c]ourts are permitted to, and do, grant 12(c) motions for partial judgment on the pleadings." *Logical Operations, Inc. v. CompTIA, Inc.*, No. 6:20-CV-06238, 2021 WL 1099619, at *3 (W.D.N.Y. Mar. 23, 2021) (citing *Arista Recs. LLC v. Lime Grp. LLC*, No. 06 CV 5936, 2011 WL 13257941, at *2 (S.D.N.Y. Jan. 7, 2011)). Tesla's attempts to distinguish these cases because some denied the relevant motions on their merits is unpersuasive. As Tesla acknowledges, the motion for "partial judgment on the pleadings" was "granted in its entirety" in *Lessambo v. Pricewaterhousecoopers, L.P.*, No. 08 Civ. 6272, 2009 WL 2170179, at *1 (S.D.N.Y. 2009). And in *Bradley v. Fontaine Trailer Co.*, No. 3:06-CV-62, 2009 WL 763548 (D. Conn. Mar. 20, 2009), where the issue was actually litigated, the Court surveyed the law and concluded that "the modern view of Rule 12(c) is to permit a motion for partial judgment on the pleadings." *Id.* at *3.

Tesla principally relies on district court decisions from outside the Second Circuit, but their rationale is unpersuasive.[5] For example, *Kenall Mfg. Co. v. Cooper Lighting, LLC*, 354 F. Supp.

---

[4] Tesla only alleges that no other dealer "designated" an Announcement Event, Countercl. ¶ 35, but as demonstrated, they had no obligation to "designate" an Announcement Event. Tellingly, Mr. Halperin states that Barclays gave "careful consideration [to the issue] over a period of time" and had "several internal discussions with the trading and internal legal teams," but does not say that Barclays concluded an Announcement Event had not occurred. Halperin Aff. ¶ 8.

[5] Tesla does cite *State of N.Y. v. SCA Servs., Inc.*, 754 F. Supp. 995, 1000 (S.D.N.Y. 1991), but that case involved a mislabeled motion to strike certain counterclaims as redundant and did not address the issue presented here.

3d 877, 894 (N.D. Ill. 2018), relies on Rule 56(a)'s express allowance of summary judgment on "part of each claim or defense" as evidence that the silence in Rule 12(c) prohibits partial relief. Yet, that same rationale would apply to Rule 12(b)(6), which is governed by the same standard as Rule 12(c), *see Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010), and courts routinely grant partial relief under Rule 12(b)(6). *See, e.g.*, *Salameno v. Rawlings*, No. 19 Civ. 4442, 2021 WL 1085521, at *17 (S.D.N.Y. Mar. 22, 2021) (Gardephe, J.) (partially dismissing breach of contract claim as to certain alleged breaches); *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 433 (S.D.N.Y. 2010) (same). Rule 12(d) permits both types of motions to be converted into Rule 56 motions if "matters outside the pleadings are present and not excluded by the court," implying that the relief available under all three rules is the same, and the only difference is the record on which the motion is decided. *See Bradley*, 2009 WL 763548, at *3 ("[B]ecause there could be a partial summary judgment, the courts concluded that there could also be partial judgment on the pleadings."). *Kenall* also placed emphasis on the word "judgment" in Rule 12(c), and the absence of any "provision in Rule 54 permit[ting] a 'judgment' on *part* of a claim," *Kenall*, 354 F. Supp. 3d at 895, but overlooked that both Rules 56(a) and 52(c) permit partial "judgments." To construe Rule 12(c) as the lone exception prohibiting partial judgment on the pleadings, even if discovery could not change the result, would frustrate Rule 1's direction to construe the rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Partial relief therefore can and should be granted, at a minimum.

II.     **Tesla Fails to Allege That the Adjustments Were Not Made in Good Faith or in a Commercially Reasonable Manner**

The pleadings are sufficient to conclude JPMorgan acted in good faith and in a commercially reasonable manner as a matter of law. Tesla's opposition confirms there is no dispute about how JPMorgan calculated the adjustments, *see* Opp. 6-7, 19; that the contract endorses adjusting based on the change in the average implied volatility before and after each Announcement Event, *see* Opp. 18-19; and that the contract requires an individualized assessment

of the economic effect of each Announcement Event, *see* Br. 21-22.  These facts are sufficient to conclude that JPMorgan's adjustments were *per se* reasonable and made in good faith.  *See* Br. 16-18.  Tesla's legal arguments are wrong and cannot prevent judgment on the pleadings.

*First*, Tesla grossly mischaracterizes JPMorgan's arguments concerning the Agreed Model, which JPMorgan points to as just one example where the contract endorses adjusting based on the change in implied volatility before and after an Extraordinary Event.  Br. 17-18.  As JPMorgan explained, that particular model "only applies if the agreement must be terminated, and even then, JPMorgan's determination 'may, but need not, be based on factors' in the Agreed Model.'"  Br. 17-18 & n.12.  Tesla criticizes JPMorgan for not using the Agreed Model's 15-day averaging periods, *see* Opp. at 19, but nothing in the contract even requires averaging; on the contrary, it permits an adjustment the *same day* based on less than one day's data, *see* Br. 21, and other provisions permit adjusting based solely on the before and after volatilities, *see id.* at 17.  Because such an approach would result in a reduction less favorable to Tesla, JPMorgan's choice to use any average already benefitted Tesla, and its "broad discretion" as Calculation Agent, User's Guide (Ex. H) § 1.40, would be meaningless if even the number of days used in the average were subject to such second-guessing.[6]

*Second*, Tesla fails to allege facts supporting its argument that JPMorgan's strike price reduction "bore no relationship to any actual 'economic effect' on the Warrants from the take-private statements."  Opp. 17-18.  Tesla's own volatility chart shows there was a massive drop

---

[6] *See Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd.*, 930 F. Supp. 2d 532, 541 (S.D.N.Y. 2013) (allegations that party "could have traded differently and more judiciously" failed to allege commercial unreasonableness); *Toledo Fund, LLC v. HSBC Bank USA, Nat. Ass'n*, 2012 WL 2850997, at *8 (S.D.N.Y. July 9, 2012) (allegations that "the manner in which [the Calculation Agent] performed [ ] could have been done differently . . . even better" is insufficient).

after the August 7 tweet, and only a more modest rebound after the August 24 blog post. *See* Br. 20 (citing Countercl. fig. 1). Mr. Halperin's affidavit also confirms, using the Agreed Model, that the market data could support a net reduction in the strike price. *See* Halperin Aff. ¶ 33. Tesla complains that this "isolate[s] a short-lived fluctuation in volatility years before the Warrants' expiration to permanently reduce the strike price," Opp. 20, but JPMorgan could not have predicted future fluctuations, and instead used the industry-standard indicator of potential future performance—implied volatility, *see* Br. 5 n.4, 8 n.6—to determine the economic effect. Under Tesla's logic, JPMorgan could never adjust in the middle of the seven-year Warrants, but such logic ignores not only the absence of any such restriction in the contract, but also the fact that dealers, like JPMorgan, are financial intermediaries who hedge their risk throughout the warrants' term. If Tesla were excused from settling simply because its stock price wound up higher than the original strike price for reasons unrelated to the Announcement Events, it would receive a windfall at JPMorgan's expense since JPMorgan hedged based on the adjusted strike price for three years and accrued a short position equal to the shares Tesla failed to deliver.

*Finally*, bad faith requires a "scheme to deprive [Tesla] of the fruit of its bargain." *See* Br. 18-19; Opp. 20. Tesla's barebones allegation that "'unilaterally reduc[ing] the Strike Price in 2018 . . . eliminated much of the Call Spread payoff that Tesla had paid for in 2014" does not meet this standard. Opp. 20 (citing Countercl. ¶ 41). It does not plead any "scheme," given JPMorgan's lack of control over the announcements and market reaction, Br. 18-19, or any "fruit of its bargain" that Tesla lost, because the strike price was always subject to adjustment if Announcement Events occurred. Exercising a contractual right is not bad faith "even if [it] lessened [plaintiff]'s

anticipated profits." *Gaia*, 720 F.3d at 93.[7]

### III. Tesla's Meritless Counterclaims Should Be Dismissed

#### A. Tesla's Breach of Contract Claims Fail as a Matter of Law

JPMorgan's adjustments were not breaches, and Tesla's other breach claims also fail:

***Early Termination Amount:***  Tesla does not dispute that JPMorgan could have recovered the full $162 million had it included a Close-Out Amount in the valuation notice.  *See* Br. 23; Opp. 21-22.  The Early Termination Amount could not have been "inflated" in "bad faith" if the full amount was recoverable under the contract.  Furthermore, any factual dispute about the reason for the erroneous breakdown in the valuation notice is immaterial, because the contract does not require a detailed breakdown, and the non-waiver provision precludes a waiver of JPMorgan's right to a Close-Out Amount.  *See* Master Agm't (Ex. C) §§ 6(d)(i), 9(f).

***2018 Termination****:* By contrast, Tesla's own authority makes clear that it waived any argument that the contract should have been terminated in 2018, notwithstanding the non-waiver provision, once it elected to continue the contract after learning about JPMorgan's purportedly breaching adjustments.  *See Awards.com, LLC v. Kinko's, In*c., 42 A.D.3d 178, 188-89 (1st Dep't 2007).  Here, Tesla not only continued the Warrants, but paid out $5 billion in stock to settle them.

The voluntary payment doctrine independently precludes Tesla from recovering any of that stock.  *See* Br. 24-25.  Tesla cites no authority allowing it to reclaim stock it voluntarily delivered to JPMorgan, on its own initiative and without any protest, based on a purported "mistake" about

---

[7] Although *Gaia* addressed the implied covenant of good faith, not a "right [that] itself expressly can be exercised only if done in good faith," Opp. 20 n.4, both "include[] a promise not to act arbitrarily or irrationally in exercising [any] discretion" provided by the contract. *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995).  None of Tesla's cases involve a similar exercise of a discretionary contractual right.  Regardless, *Gaia* is binding here; the First Department cases and the dicta in the Second Circuit's earlier *Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*, 487 F.3d 89 (2d Cir. 2007) decision are not.

whether an Announcement Event had occurred. Opp. 24. Tesla knew for years its position was disputed and made the payment without regard for the risk that it was wrong. *See* Br. 24-25. That is the very definition of a voluntary payment. As in *Turner Network Sales, Inc. v. Dish Network*, 413 F. Supp. 3d 329 (S.D.N.Y. 2019), Tesla's "mistaken understanding of its obligations under the contract [ ] does not warrant excusal from the voluntary payment doctrine." *Id.* at 341.

*Indemnification:* Tesla is not entitled to indemnification. JPMorgan committed no breach, but even it had, a breach only results in an Event of Default after notice—provided in the manner specified by the contract—warning that it was a Potential Event of Default and demanding a cure within 30 days. *See* Master Agm't (Ex. C) §§ 5(a)(ii)(i), 12; Br. 24. Tesla never alleges it provided such notice or otherwise availed itself of any of the Event of Default remedies.

### B. Tesla's Declaratory Judgment Claim Must Be Dismissed as Duplicative

Tesla's counterclaim does not seek any declaratory relief that would not be obtained or mooted by JPMorgan's breach claim. Tesla argues that the Court may not resolve the final strike price if it concludes that no Announcement Event occurred, but in that circumstance, there would be no basis to adjust and the strike price is "undisputed." Ans. ¶ 41, Ex. BB; *see Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996) (declaratory relief requires "a live controversy"). Tesla's counterclaim serves no purpose.

### CONCLUSION

For all these reasons, this Court should enter full or partial judgment in JPMorgan's favor.

| | |
|---|---|
| Dated: New York, New York<br>July 18, 2022 | DAVIS POLK & WARDWELL LLP<br><br>By: */s/ Lawrence Portnoy*<br>　　　Lawrence Portnoy<br>　　　Greg D. Andres<br>　　　Sheila R. Adams<br>　　　Craig T. Cagney<br>　　　Michael V. Pucci<br><br>450 Lexington Avenue<br>New York, New York 10017<br>(212) 450-4000<br>lawrence.portnoy@davispolk.com<br>greg.andres@davispolk.com<br>sheila.adams@davispolk.com<br>craig.cagney@davispolk.com<br>michael.pucci@davispolk.com<br><br>*Attorneys for JPMorgan Chase Bank,*<br>*National Association, London Branch* |