**VIA ECF**

December 13, 2022

The Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:  *JPMorgan Chase Bank, N.A., London Branch v. Tesla, Inc.*,
 No. 1:21-cv-09441-PGG-OTW (S.D.N.Y.)

Dear Judge Gardephe:

The above-named parties, by and through their respective undersigned counsel, write pursuant to Section IV(E) of Your Honor's Individual Rules concerning the parties' various discovery disputes. The disputes are described in the parties' respective position statements attached hereto.

The parties have met and conferred on the issues discussed herein in connection with discovery negotiations for the last several months, including most recently a meet and confer on November 29, 2022 and correspondence exchanged between the parties on November 30, 2022 and December 9, 2022. Counsel representing JPMorgan during these meet and confers included Frances E. Bivens, Sheila R. Adams, Craig T. Cagney, and others, and counsel representing Tesla during these meet and confers included Nathan Goralnik, Ari Roytenberg, Gilbert Oladeinbo, Kayla Slattery, and Mark Fuchs.

The parties request that the discovery disputes discussed herein be referred to Magistrate Judge Wang, who has already heard a prior discovery dispute in this matter.

Respectfully submitted,


By: */s/ Jonathan Pickhardt*
Jonathan E. Pickhardt
51 Madison Avenue, 22nd Fl.
New York, New York 10010
Tel.: (212) 849-7000
jonpickhardt@quinnemanuel.com

*Attorneys for Defendant Tesla, Inc.*

By: */s/ Frances Bivens*
Frances E. Bivens
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
frances.bivens@davispolk.com

*Attorneys for Plaintiff JPMorgan Chase Bank, N.A., London Branch*

**Tesla's Position Statement**

JPM has demanded $162.2 million to close out warrants on Tesla's stock, asserting that it was entitled to obtain shares from Tesla at a deep discount to the agreed strike price. In 2018, JPM purported to adjust the warrants' strike price in its favor, allegedly to maintain the theoretical value of its position after Elon Musk considered taking Tesla private. Contrary to JPM's allegations, discovery has revealed that the adjustments netted profits that were *so large and so unusual* that they were flagged for JPM's top brass, who knew that JPM was profiting at Tesla's expense.

JPM has tried to thwart discovery of these facts through delay and misrepresentation. Despite Tesla's repeated requests, JPM failed to identify *whole categories* of relevant witnesses: its written disclosures identified *none* of the finance executives who reviewed JPM's profits from the adjustments; *none* of the controllers who tested JPM's valuations; *none* of the risk managers responsible for the warrants; *none* of the personnel on several relevant trading desks; and *none* of the senior leaders who approved JPM's attempt to extract a windfall from a former client. Witnesses whom JPM unaccountably failed to disclose include, for example: the risk manager who wrote a detailed, 15-page memo on JPM's purported adjustments; the senior risk officers who briefed JPM's Board of Directors; the single-stock flow trading desk head who managed Tesla's option-volatility during August 2018; the controllers who reported on the adjustments to JPM's President; JPM's coverage bankers and credit officer for Tesla; and numerous senior finance executives who reviewed JPM's windfall profits from its adjustments to the warrants and the associated risks. JPM knowingly failed to identify these witnesses in its interrogatory responses, acknowledging that its adjustments were reported to "others" whom JPM has yet to identify after more than ten months of discovery.

JPM's concealment of key witnesses has prejudiced Tesla by depriving it of the opportunity to request appropriate document custodians. By way of example, several recent near misses illustrate the unacceptable consequences of JPM's disclosure failures. *First*, because JPM failed to disclose its responsible risk managers, it was only by sheer luck – thanks to a stray email sent while JPM's risk team was out of the office – that Tesla has learned that the team was briefing the Board of Directors on the adjustments, a fact that nearly went undiscovered. *Second*, on July 20, 2022, JPM gave false assurances that it had disclosed all the traders who made markets in Tesla options. Although Tesla quickly challenged this misrepresentation, it took JPM until September 30, 2022 to admit that it had failed to identify numerous witnesses on at least three trading desks. Even then, JPM failed to identify a trader who authored scores of relevant documents, along with the London-based trading unit that built the Saudi fund's stake in Tesla that was reported shortly before Mr. Musk's Twitter posts. *Third*, JPM has denied or minimized the involvement of key bankers, suggesting in a November 18, 2022 letter, for example, that banker Michael Millman did not have "any responsibility" for the warrants that JPM structured even though he was the person who had persuaded Tesla to hire JPM in 2014; and that Jamie Dimon was not "actually responsible" for the Tesla relationship even though JPM's documents indicate he was JPM's key contact with Mr. Musk. *Fourth*, JPM denied meaningful involvement by its CFO, Jeremy Barnum, and initially failed to confirm that Mr. Barnum had reviewed JPM's profits from the adjustments as a member of JPM's Valuation Governance Forum – only to later admit that he had done so. *Fifth*, JPM has dragged its feet for months in response to Tesla's reasonable inquiries about what trading records JPM will produce and what document repositories will be searched for evidence of JPM's practices and procedures as Calculation Agent for transactions like the warrants at issue.

From among the dozens of relevant witnesses whom JPM failed to disclose, Tesla has taken care to craft a narrowly targeted, remedial proposal that is limited to the documents of: (i) just one risk manager, Sean Engles, from August 15 through September 4, 2018, *i.e.*, the three weeks surrounding his extensive August 31, 2018 memo on the warrant adjustments and their impacts; (ii) trader Michael Kurd, from August 7 through September 6, 2018, *i.e.*, the month from Mr. Musk's first Twitter post through JPM's month-end assessment of its resulting gains; (iii) senior banker Carlos Hernandez, from August 7 through 28, 2018, when he and his colleague, Constance Coleman, led a group of bankers in navigating revenue opportunities from Tesla, including JPM's first adjustment; and (iv) CFO Jeremy Barnum, from August 15 through September 14, 2018, dates bookended by Mr. Barnum's known briefings on JPM's windfall profits from its adjustments. In addition, JPM should produce any communications related to the warrant adjustments among its top executives and board members, including former CFO Marianne Lake, President Daniel Pinto, and Chairman and CEO Jamie Dimon, whom Tesla has been unable to identify due to JPM's insufficient disclosures. Tesla also seeks JPM's trading records in Tesla stock and options between May 10 and August 10, 2021, because JPM bases its alleged damages claim on such records. *See Stevens v. Kirk*, 1987 WL 12840, at *3 (S.D.N.Y. June 17, 1987) ("plaintiff's failure to provide the Court with evidence of his stock transactions relevant to this litigation is fatal"); *In re Worldcom, Inc. Sec. Litig.*, 2004 WL 298119, at *1 (S.D.N.Y. Feb. 17, 2004) (motion to compel).

Although Tesla raised its concerns about JPM's custodians and sought to meet and confer more than a month before the deadline for the substantial completion of document discovery, JPM has manufactured delay, apparently as a pretext to object to Tesla's requests. Tesla has offered timely compromises to resolve the dispute without motion practice, including by designating a former director of Tesla's Office of the CEO as a custodian, but JPM's responses have ranged from unreasonable counter-demands to flat refusal. For example, while JPM refuses to provide *any* discovery from its senior management, JPM has demanded irrelevant, far-reaching discovery from Mr. Musk and Tesla's current CFO in 2021, *three years after* Mr. Musk considered taking Tesla private. While Tesla has already designated a half-dozen custodians on its finance team – including its CFO at the time Tesla issued the warrants and when Mr. Musk considered taking Tesla private – JPM insists on irrelevant, cumulative discovery from Tesla's current CFO while refusing *any* discovery from JPM's own finance team. JPM now demands that Tesla review *every email* (*i.e.*, without applying search terms) that certain custodians exchanged with four major banks over long stretches of time, and *every email* hitting on the terms "JP*" or "Chase." Most recently, JPM has baselessly demanded last-minute expansions of discovery in 2019 and 2021, on the thin pretext that the parties' counsel corresponded regarding the dispute around those times.

JPM has made no secret of the fact that its counter-demands are intended to drive up the burden of discovery. JPM's assertion that this is a reasonable goal due to the number of documents JPM expects to produce is meritless and misleading. This action concerns JPM's reaction to a series of Twitter posts. While Mr. Musk publicly considered taking Tesla private over a period of *three weeks* in 2018, JPM's responsibility for the warrants spanned *more than seven years*. It is no surprise that JPM's handling of its Tesla warrants and related post-tweet volatilities generated many more documents over that time period – and that comparatively few of those documents are in Tesla's custody. Tesla's productions to JPM include testimony from virtually every significant Tesla witness and discovery from four proceedings on top of the wealth of public information in JPM's possession. To remedy JPM's prejudicial failure to provide basic discovery, Tesla's reasonable, targeted requests should be granted in full, with documents to be produced in January.

### JPM's Position Statement

This case arises out of JPM's adjustments to certain warrants in Tesla stock, which it had the contractual right to make as a result of Elon Musk's tweet in 2018 announcing that he was considering taking Tesla private at a price of $420 per share, and that the funding for that transaction had been secured. A federal district court has held that the tweet, which JPM relied on in making the adjustment, was recklessly false and misleading when made. *In re Tesla Sec. Litig.*, No. 18-cv-04865, 2022 WL 1497559, at *21 (N.D. Cal. Apr. 1, 2022).

JPM sought the Court's intervention in September to address Tesla's refusal to produce relevant documents in this case. There, as a work around, JPM asked Tesla to produce to JPM the document production Tesla had already made in the securities class action litigation and the earlier SEC investigation involving the Musk tweet. Magistrate Judge Wang ordered Tesla to produce those documents. After a year of discovery, *Tesla has produced only 9,000 documents*, 80% of which are the documents ordered by Judge Wang. However, those documents, because of the nature of the underlying disputes, relate only to Musk's 2018 tweet and whether the tweet was misleading. The balance of Tesla's production to date (approximately 1,500 documents from 11 custodians selected by Tesla, using only search terms that Tesla has proposed) contains ***virtually nothing*** related to the central issue in this case: the adjustments to the warrants in 2018 and the settlement of the warrants in 2021. Tesla has produced only 300 new documents from 2018, 100 new documents from 2021, and ***no*** substantive internal discussions at Tesla about the adjustments or the settlement.

Tesla's position statement grossly mischaracterizes the parties' dispute and discussions, prematurely raises issues, such as a supposed briefing given to JPM's board of directors, that Tesla has never raised with JPM, and is filled with other inaccuracies we do not have space to address. JPM has been attempting to get basic discovery from Tesla for months but Tesla has not agreed to a single request from JPM to add custodians, date ranges, or search terms. At the same time, JPM has agreed to most of Tesla's requests. JPM initially proposed 8 custodians who were responsible for the adjustments, and months ago, agreed to add 7 more custodians requested by Tesla. JPM has largely agreed to *all* the search terms Tesla requested. As a result, JPM has reviewed nearly 140,000 documents, including 30,000 from 15 custodians at the time of the 2018 adjustments and 85,000 from 10 custodians at the time the warrants settled in 2021. JPM has already produced approximately 33,000 responsive documents, and will make another production by the substantial completion date this week.

Rather than reciprocate and produce its own records, Tesla has used JPM's fulsome production to pepper JPM with endless questions about individuals on the periphery of the process—questions JPM has promptly investigated and answered. Tesla now complains it needs 5 or more custodians it found on "stray emails," even though the most significant role any of them had was drafting an after-the-fact memo about the adjustments' P&L impact—a memo produced to Tesla months ago. Forcing JPM to add custodians who had no responsibility for the adjustments, or to search for trading records with no articulated connection to JPM's damages, is

4

unnecessary and unduly burdensome.

Tesla cannot credibly argue about burden when it has produced only 1,500 documents beyond the productions from other litigations, and has refused to add key search terms, custodians, and date ranges that ***go to the very heart of this case***.  Tesla has not agreed to any of JPM's proposals, and is not even running the search terms *Tesla itself* proposed and which JPMorgan agreed to use for its own production.  Instead, Tesla is unilaterally searching just 9 custodians in 2018, 5 custodians in 2021, and 35,000 documents for all time periods.[1]  Tesla must be compelled to produce basic documents that go to the heart of this case, and should be ordered to produce the following:

**Communications Related to JPM and the Other Dealer Banks.**  The search terms Tesla has unilaterally run over its own documents inexplicably exclude the most relevant terms from JPM's proposal.  First, Tesla has narrowed the search terms related to JPM's name, even though an adversary's name should be the bare minimum search term in a commercial dispute of this nature, especially here where Tesla has accused JPM of making punitive adjustments to the warrant in retribution for a deteriorated business relationship.  Second, Tesla has failed to include *any* terms designed to capture its communications with the other dealer banks that held the same Tesla warrants as JPM, despite the fact that the heart of Tesla's defense is that JPM's adjustment was unreasonable because those banks did not do the same.  Indeed, Tesla has conceded the relevance of such communications by issuing its own subpoenas to the other dealer banks.

**Communications of Elon Musk, Zachary Kirkhorn, Sam Teller, and Omead Afshar.** Tesla has refused to provide JPM with basic information to assess the sufficiency of Tesla's self-selected custodians.  At the very least, Tesla should be compelled to add the following:

- ***Elon Musk***:  Musk is an agreed custodian for 2018, and Tesla concedes he played a role in the settlement of the warrants in 2021, but refuses to add him as a custodian for that time period.  Musk is a central figure in this litigation and the few documents Tesla has produced demonstrate that he exercises substantial control over Tesla's operations.  He was involved in decisions about which banks to use as dealers when Tesla sold the warrants in 2014, and had discussions in 2018 with at least one dealer bank (other than JPM) about potential adjustments to the warrants as a result of the going-private tweet.  Musk publicly commented on JPM's lawsuit after it was filed, and shortly afterward tweeted that he was forming a new litigation unit at Tesla that "will never surrender/settle an unjust case against us, even if we will probably lose."  This record provides substantial justification to add Musk as a custodian for 2021, as he likely has documents relevant to Tesla's understanding of its settlement obligations and whether Tesla's decision not to settle in full (and instead litigate against JPM) was made in good faith.

- ***Zachary Kirkhorn***:  Tesla concedes that Kirkhorn's predecessor, Deepak Ahuja,

---

[1] Tesla has not committed to producing the responsive results from its own proposed searches by the December 16, 2022 substantial completion deadline.  It should be compelled to produce the responsive results immediately.

5

in his role as CFO of Tesla, was involved with the negotiation of the warrants in 2014 and in responding to JPM's adjustments to the warrants in 2018.  It is simply not credible that his successor as CFO,  Kirkhorn, had no involvement in settling the multi-billion dollar warrant transaction, where Tesla's refusal to settle in full created a $162 million dispute with JPM. Tesla's meager document production confirms that Kirkhorn was involved, and provides a strong basis to believe he has relevant documents from 2019, when Ahuja left, to 2021, when the warrants settled.

- *Sam Teller and Omead Afshar*:  Teller was known as Musk's "Chief of Staff" and, according to Teller's own testimony, he was involved in many of Tesla's business matters until he left in 2019, including the going-private negotiations.  Mr. Teller was also on a communication in which another dealer bank (not JPM) informed Tesla that Mr. Musk's tweet could trigger adjustments on the warrants.  Afshar succeeded Teller in that role.  This provides a strong basis to believe that both have relevant communications about JPM's adjustments in response to the going private tweet and the settlement of the warrants.

**Additional Communications from 2019 and 2021**: The March 1, 2021 – August 26, 2021 and February 13, 2019 – March 1, 2019 date ranges for Tesla's searches should be modestly expanded to include communications: (i) prior to a March 5, 2021 briefing to Kirkhorn about JPM's adjustments, (ii) prior to Tesla's February 13, 2019 letter to JPM about the adjustments, and (iii) after receiving JPM's March 1, 2019 response to Tesla's letter.