**Davis Polk**

Frances E. Bivens
+1 212 450 4935
frances.bivens@davispolk.com

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
davispolk.com

September 1, 2023

Re: *JPMorgan Chase Bank, National Association, London Branch v. Tesla, Inc.*,
    Case No. 1:21-cv-9441 (PGG)

The Honorable Ona T. Wang
United States Magistrate Judge for the
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

Dear Judge Wang:

We write on behalf of JPMorgan Chase Bank, National Association, London Branch ("JPMorgan") in response to the status update that Defendant Tesla, Inc. ("Tesla") provided to the Court in its August 25, 2023 letter.  ECF No. 106 (the "Tesla Letter," or "Tesla Ltr.").  We understand that Tesla is not moving to compel or seeking the Court's intervention on any of the issues raised in that status letter.  While we do not agree with many of Tesla's characterizations of the meet and confer process and of JPMorgan's positions, we do not intend to address those here.  We write simply to provide a further update to the Court and ensure the Court has a full and accurate report of the status of discovery prior to the September 7, 2023 conference.

- a. **SpaceX Emails**

At the last discovery conference on July 19, 2023, the Court ordered Tesla to produce responsive emails from Mr. Musk's SpaceX email account by August 16, 2023.  Tesla made a production of Mr. Musk's SpaceX emails on August 16, 2023, and JPMorgan is presently reviewing that production.

- b. **Text Messages**

As discussed at the last conference, JPMorgan has been seeking text messages from Tesla's document custodians from the outset of the case.  At the conference, Tesla disclosed that it has imaged copies of certain custodians' mobile devices that were made in 2018.  After the conference, the parties agreed to a protocol that Tesla would use for searching those images, as well as for conducting further searches for text messages of custodians whose devices were not imaged or who may have sent or received relevant text messages after their devices were imaged in 2018.  JPMorgan understands that Tesla is in the process of doing the following:

- Searching and reviewing the imaged devices of Elon Musk for all relevant time periods for certain categories of communications that JPMorgan has requested;
- Searching and reviewing the images made in 2018 of the devices of Deepak Ahuja, Sam Teller, and Omead Afhsar for responsive communications using the agreed-upon search terms;
- Determining if Mssrs. Ahuja, Teller, and Afhsar have any additional responsive text messages in their possession for the relevant time periods after their devices were imaged in 2018, and collecting and producing any additional text messages they identify; and

**Davis Polk**

- Determining whether Brian Billecci, Shane Deaton, Ron Klein, Richard Gumirov, Zachary Kirkhorn, and Yun Huh have any responsive text messages in their possession from all relevant time periods, and collecting and producing any responsive text messages they identify.
- For all agreed custodians, the searches will include messages sent or received on any messaging platforms, including but not limited to WhatsApp and Signal.

JPMorgan reserves all rights pending review of Tesla's production of these documents.

### c. Audio Recordings

Certain of JPMorgan's desk traders have their telephone lines recorded for regulatory purposes. In the last few months, Tesla has sought the production of such recordings. Although JPMorgan objected to collecting and searching for these audio recordings from the outset due to the substantial burden, after several months, JPMorgan has now collected all available audio recordings for its custodians from August to September 2018, which includes the time period during which JPMorgan decided to make and did make the warrant adjustments at issue in this case. JPMorgan has identified approximately 8,500 recordings during this time frame from three trader custodians, constituting almost 1,400 hours of audio recording. Reviewing these recordings is very burdensome, because it entails listening to each potentially relevant recording. Tesla suggested that JPMorgan, in the first instance, search for certain specific conversations on specific days and times, which JPMorgan has tried to do, but JPMorgan has concluded that there is no way to accurately identify the specified conversations without performing a full review. As a result, despite the burden involved, JPMorgan has agreed to review the 2018 recordings and produce any responsive recordings.

Tesla has also sought calls from 2021, when the warrants were settled and Tesla failed to pay in full. Given the substantial burden involved in merely collecting let alone reviewing the audio recordings, the benefit to Tesla of the 2021 recordings does not justify the burden on JPMorgan. The settlement of the warrants in 2021 is not a central issue in this case. Unlike the 2018 recordings, the 2021 recordings will not reflect any contemporaneous business discussions about whether to make the adjustments.

### d. Implied Volatility Data and NRG Exports

Tesla previously requested data reflecting JPMorgan's internal implied volatility surfaces for the thirty trading days before and after Mr. Musk's August 7, 2018 tweet, which JPMorgan produced on July 28, 2023.

JPMorgan separately produced daily position exports from the NRG system for the calendar month August 2018 in response to Tesla's other requests. Tesla has now made a new request for the NRG daily exports for the thirty trading days before and after August 7, 2018. JPMorgan has agreed to produce those additional exports.

### e. Centralized Files

JPMorgan has produced over 5,000 pages of documents from the centralized files identified by its relevant document custodians as locations where they saved documents concerning the warrants, the adjustments, and Tesla. JPMorgan's productions also include system data and other specific documents requested by Tesla that were found in centralized files through non-custodial searches.

Tesla continues to request documents that it characterizes as "centralized files," but which are, in fact, attempts to relitigate substantive discovery issues that Tesla either has already litigated and lost, or previously dropped following the parties' meet and confer process.

**Davis Polk**

For example, JPMorgan has consistently objected to searching for documents from its Market Risk and Valuation Control Group functions, as they had no decision-making authority with respect to the adjustments and Tesla's requests are thus not relevant or proportional to the needs of the case. This Court agreed at the February 16, 2023 conference and rejected Tesla's attempt to add a Market Risk employee, Sean Engles, as a separate email custodian. Instead, the Court directed JPMorgan to produce all available drafts of Mr. Engles' look-back "Deep Dive Report" about the adjustments, which JPMorgan produced. JPMorgan voluntarily took the same approach to a similar report prepared by the Valuation Control Group. In response to Tesla's objections at the last conference that it was supposedly improper to produce only the requested documents and not search the location where those documents were saved for other responsive documents, JPMorgan has agreed to search those locations. Nonetheless, Tesla has continued to press for JPMorgan to search all of Market Risk's and the Valuation Control Group's centralized files, while providing no new or persuasive basis for such an expansion of discovery.

The other categories of documents identified in Tesla's August 25, 2023 letter to the Court involve similar substantive disputes:

  i. **Valuation Control Group's report to the Valuation Governance Forum.** Tesla's letter refers to a single PowerPoint slide prepared by the Valuation Control Group and presented to the Valuation Governance Forum—an internal auditing function—which summarized the adjustments to the Tesla warrants and provided context for understanding their P&L impact. Tesla omits that JPMorgan already produced a copy of this presentation in its email production. As explained above, JPMorgan does not agree that either the Valuation Control Group, or its after-the-fact presentation to the Valuation Governance Forum, is relevant and proportional to the needs of the case and thus does not agree that any additional searches of the Valuation Control Group's files are warranted.

  ii. **JPMorgan's business relationship with Tesla.** Tesla has attempted to inject the parties' overall business relationship into this case, but JPMorgan objects to that as irrelevant, except to the extent the business relationship was a factor considered when making the adjustments at issue. JPMorgan has been clear that this substantive position informed its approach to discovery: JPMorgan objected to conducting any general searches for documents about the overall business relationship—which involved business lines such as auto leasing completely unrelated to the warrants—but agreed to perform broad email searches using negotiated search terms, custodians, and date ranges designed to capture documents, if any, relating to whether the business relationship impacted the warrant adjustment, and agreed not to withhold any documents concerning the parties' overall business relationship identified during that review. Because those searches included the emails of Peter Engel, who was responsible for JPMorgan's overall business relationship with Tesla, JPMorgan has produced a substantial volume of documents about the parties' business relationship.

  Significantly, Tesla is equally knowledgeable about the parties' business relationship, but never proposed any different custodians, date ranges, or search terms to target documents specific to this topic. Nor has Tesla produced any documents about the business relationship between the parties itself, either from custodial email or centralized files. JPMorgan does not believe that any additional searches on this subject are warranted.

  iii. **Tesla's potential going-private transaction.** Similar to its approach to the overall business relationship, JPMorgan produced all responsive documents concerning the going-private transaction that related to the warrant adjustments at issue in this case. That includes emails from Ryan Brinkman, the equity researcher assigned to Tesla, and Peter Engel, who would have been consulted about any role that JPMorgan might have had or considered in connection

**Davis Polk**

      with the going-private transaction.  JPMorgan never agreed to conduct a general search for every document at the bank related to Tesla's public going-private announcement, regardless of whether it was known to or considered by the relevant decision-makers on the warrant adjustments.  JPMorgan does not believe that any additional searches on this subject are warranted.

iv. **Information Related to JPMorgan's Practice Concerning Other Adjustments.**  JPMorgan has always objected to producing information regarding the details of every other warrant adjustment the bank has ever made, because the specifics are generally irrelevant and not proportional to the needs of the case.  Instead, JPMorgan has searched for and produced documents regarding its general adjustment practices to the extent they could be located from non-custodial searches.  In addition, it has produced emails regarding other adjustments that hit on generic search terms related to those adjustment practices for the agreed custodians during the agreed time periods.  Furthermore, JPMorgan has also produced other specific documents related to this issue that Tesla has requested.  JPMorgan is not aware of any additional centralized files responsive to this issue and does not believe any further search is warranted.

v. **Trading portfolio containing the Warrants at issue in this action.**  At a meet and confer on August 31, 2023, counsel for Tesla clarified that this topic, *see* Tesla Ltr. at 3, refers to its request that JPMorgan search centralized files for information about so-called "layoff trades"—trades between JPMorgan and a third party that effectively assigned a portion of JPMorgan's exposure to the warrants—and other hedging activities.  JPMorgan objected to such topics as irrelevant, because JPMorgan's risk mitigation strategies have no bearing on Tesla's liability under the contract.  Nonetheless, JPMorgan produced a substantial amount of documents on those topics through its email productions, and from its production of the NRG exports reflecting all positions in its Tesla portfolio.  JPMorgan does not believe any further search is warranted.

vi. **Risk Reports.**  At the August 31, 2023 meet and confer, Tesla clarified that the "highly relevant risk reports," Tesla Ltr. at 3, refers to certain summary reports about JPMorgan's call spread transactions that were sent to JPMorgan's custodians by email, and mention the Tesla call spread as one position in that report.  JPMorgan is investigating Tesla's request for a complete set of such reports.

Respectfully submitted,

*/s/ Frances Bivens*

Frances Bivens

cc:    All counsel of record (via ECF)